# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID STARKS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 08-cv-407-GPM ) |
| CHERYL COUCH, *et al.*, | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Pending before the Court is a motion for preliminary injunction filed by Plaintiff (Doc. 13), a motion for summary judgment (Doc. 47) and a motion to dismiss (Doc. 48) filed by Defendant Rhodes, a cross-motion for summary judgment filed by Plaintiff (Doc. 54), and a motion to stay discovery filed by Defendant Rhodes (Doc. 52). The Court held a hearing on February 9, 2009.

Plaintiff David Starks is a prisoner in the custody of the Illinois Department of Corrections. He filed a pro se lawsuit claiming violation of his constitutional rights pursuant to under 42 U.S.C. §1983. The case was removed from state court by Defendants Kachigian, Couch, and Hammersley (*see* Doc. 2).

The events giving rise to the lawsuit occurred at Tamms Correctional Center. Starks claims that on February 4, 2004, some legal materials were removed from his cell, which angered him. As he was "already in discussion with the mental health team," Defendant Couch attempted to talk with Starks about the confiscation of the materials. Apparently Starks decided that further conversation with Defendant Couch would be useless. On February 10, 2004, Defendant Couch attempted to speak

with Starks, but he refused to respond.  Defendant Couch contacted Defendant Rhodes, a psychologist, who had Starks placed on suicide watch for seven days.  During that time, he had no shower, personal property, yard, shoes, legal materials, pen, or religious items.  He was given a security mattress and had to eat with his fingers off a paper towel instead of a tray.  He was released from suicide watch only after he agreed to speak with the mental health team and take prescribed medication.  Thereafter, he expressed his desire to refuse treatment, but he was told he would be placed back on suicide watch if he did so.

By January 2007, Starks's medication had been increased, and he had been prescribed antidepressants.  He became fed up with the defendants.  In March 2007, Starks forwarded several requests to discontinue all treatment and medication.  On March 16, 2007, Defendant Couch came to talk with Starks.  Upon being informed that Starks wanted to discontinue treatment, Defendant Couch contacted Defendant Rhodes, who admitted Starks to the infirmary for "close supervision."  He was given a foam mattress, paper jumpsuit, finger food only, safety toothbrush and blanket, and was not allowed legal materials or personal property.  Starks alleges that he was compelled to give up his right to refuse treatment and right to choose not to speak in order to get off close supervision.     In early 2008, Defendant Kachigian began coming to Starks's cell to talk to him, but Starks would refuse to talk.  Starks told her that he wanted to stop taking the medication, and she told him that, if he stopped, she would not do anything to him.  He claims, however, that he continued to take the medication out of fear of the mental health team.  Starks alleges that this series of events violated his First Amendment right to choose not to speak and his right to refuse medical treatment.   Defendant Rhodes is a psychologist.  The claim against her is that she placed him on suicide watch for seven days in 2004 after he refused to speak with mental health staff, and that she admitted him to the infirmary in 2007 after he again refused to speak with mental health staff.  Rhodes argues that Starks has failed

to state a claim and that she is entitled to qualified immunity.

Under *Saucier v. Katz*, 533 U.S. 194 (2001), whether a defendant enjoys qualified immunity is determined by a two-step process. A court must first determine whether the plaintiff has alleged a violation of a constitutional right; if the answer is yes, the court must go on to consider whether that right was clearly established at the time. *Saucier,* 533 U.S. at 210. In *Pearson v. Callahan*, No. 07-751, 2009 WL 128768 (S. Ct., Jan. 21, 2009), the United States Supreme Court held that courts may, in an appropriate case, deviate from rigid adherence to the two-step *Saucier*. Thus, in an appropriate case, the court may turn first to the issue of whether the constitutional right alleged by plaintiff was clearly established at the relevant time. If the answer is no, the court need not decide whether plaintiff has validly alleged a violation of a constitutional right.

Starks has not stated a claim for a due process or a First Amendment violation because there is no constitutional right to avoid being placed on suicide watch. While Starks has a right to refuse medical treatment, Defendant Rhodes's precautionary measure of placing Starks on suicide watch to prevent him from harming himself was a discretionary function done in good faith as a mental health professional. This claim is dismissed on the merits.

Moreover, Rhodes is entitled to qualified immunity on Starks's claim that the conditions of confinement on suicide watch and close supervision constitute cruel and unusual punishment. To the extent that the complaint alleges an independent violation of the Eighth Amendment, Defendant Rhodes is entitled to qualified immunity. The conditions alleged by Starks during the relatively short suicide watch and close supervision do not constitute cruel and unusual punishment. The Eighth Amendment is violated only where the inmate is deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The conditions alleged by Starks do not come close, especially since they were of limited duration. *See Harris v. Fleming*, 839 F.2d 1232,

1235 (7th Cir. 1988) (ten days without toilet paper, toothbrush or toothpaste in a filthy, roach infested cell did not constitute cruel and unusual punishment); *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971) (no constitutional violation where inmate's cell was filthy and stunk, water faucet was inches above the toilet and ventilation was inadequate); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (conditions in cell with no air conditioning, peeling paint, foul odor, and roaches were not unconstitutional). In light of the foregoing, Defendant Rhodes's motions (Doc. 47, 48) are granted, and Plaintiff's cross-motion for summary judgment (Doc. 54) is denied. Defendant Rhodes's motion to stay discovery (Doc. 52) is moot.

Next, although not addressed at the February 9 hearing, the Court has considered Plaintiff's motion for preliminary injunction. A party seeking a preliminary injunction must demonstrate: (1) no adequate remedy at law exists, (2) he will suffer irreparable harm if the injunction is not granted, (3) he has a reasonable likelihood of success on the merits of the underlying claim, (4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the injunction is granted, and (5) the injunction will not harm the public interest. *Kiel v. City of Kenosha,* 236 F.3d 814, 815-16 (7th Cir. 2000).

Starks has not demonstrated a reasonable likelihood of success on the merits of the underlying claim. His motion rests on the proposition that he has an *absolute* right to refuse mental health treatment, and an *absolute* First Amendment right to refuse to speak. As explained above, he is wrong. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78 (1987). In *Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988), the Seventh Circuit noted that this is "not a demanding standard." *Reed*, 842 F.2d at 962. Safety and security of the institution are legitimate penological interests. *Washington v. Harper,* 494 U.S. 210, 223 (1990).

Further, Starks has not demonstrated that he will suffer irreparable harm or that the harm suffered by him would be greater than the harm suffered by the opposing party. The mental health team at Tamms concluded that Starks is in need of treatment. Recognizing the prison's legitimate interests in the safety and security of the staff and inmates, it is impossible to conclude on the present record that the safety and security of the institution will not be compromised by forbidding defendants to provide such treatment.

Finally, the Court expressed concern at the February 9 hearing that Defendant Pepper has not been served. The docket sheet reflects that after numerous attempts to secure a last known address for this individual, summons was issued on November 25, 2008, and a service packet was forwarded to the United States Marshals Service. As of today's date, it does not appear that Pepper has been served. The Court will allow a brief additional amount of time for this individual to be served.

In conclusion, Plaintiff's motion for preliminary injunction (Doc. 13) is **DENIED**; Defendants Rhodes's motion for summary judgment on qualified immunity (Doc. 47) and motion to dismiss (Doc. 48) are **GRANTED**; Plaintiff's cross-motion for summary judgment (Doc. 54) is **DENIED**; and Defendant Rhodes's motion to stay discovery (Doc. 52) is **MOOT**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Rhodes at the conclusion of the entire action.

**IT IS SO ORDERED.**

DATED: 02/11/09

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge